# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MICHAEL SHAWN EVANS,**

      **Plaintiff,**

**v.**                                       **Civil Action No. 2:15cv60**
                                                 **(Judge Bailey)**

**OFFICER CUNNINGHAM, Guard at**
**FCI Gilmer; LT. YARBER, Lt. of Prison**
**Guards; WARDEN PERDUE; CAPT.**
**YOUNG, Capt. of Security at FCI Gilmer;**
**and FCI GILMER,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Introduction

On August 3, 2015, the *pro se* plaintiff initiated this case by filing a <u>Bivens</u>[1] civil rights complaint against the above-named defendants.[2] The plaintiff was granted permission to proceed as a pauper on August 19, 2015 and paid his initial partial filing fee on December 28, 2015.

On January 5, 2016, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not warranted at that time. Therefore, the undersigned directed the defendants to answer the complaint; the Clerk was directed to issue 60-day summonses and forward copies of the complaint to the United States Marshal Service to effect service of process upon the defendants.

On February 29, 2016, the defendants filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment with a memorandum in support. Because Plaintiff was

---

[1] <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

[2] At the time Plaintiff filed this <u>Bivens</u> action, he already had had a FTCA action pending since May 27, 2015 over the same reason and subject matter as alleged in this complaint. A Report and Recommendation is still pending in that case, having been entered on April 11, 2016. <u>See</u> Case No. 3:15cv64.

proceeding *pro se*, a <u>Roseboro</u> Notice was issued on March 15, 2016. The Plaintiff moved for an extension of time and by Order entered March 15, 2016, the extension was granted. On March 28, 2016, Plaintiff filed for another extension of time in which to respond. By Order entered March 30, 2016, the extension was granted. On April 18, 2016, Plaintiff filed a motion for appointed counsel; it was denied by Order entered April 20, 2016. On May 2, 2016, the Plaintiff filed his response in opposition, titled Plaintiffs [sic] Objections to Defendants [sic] Memorandum of Law in Support of Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.

## II. <u>The Pleadings</u>

### A. <u>The Complaint</u>

In the complaint, the plaintiff raises Eighth Amendment violation claims for failure to protect and failure to supervise, arising out of a May 2, 2013 assault upon him from behind while he was eating in the FCI Gilmer dining hall by another inmate wielding a Phillips-head screwdriver. Plaintiff contends he was wrongfully disciplined because he fought back in self-defense when the guards failed to immediately intervene, and that he lost good conduct time as a result. He asserts that Warden Perdue was deliberately indifferent to his safety by failing to set any policies or procedures in place[3] and/or failing to enforce the control of BOP tool policies, procedures, regulations and rules that would assure accountability for all tools, to protect prisoners like him from attack. Further, he contends Warden Perdue upheld the false misconduct report against him, in order to cover up the missing screwdriver. He alleges that all the defendants, "intentionally with neglect or negligence failed to adhere to the directives, policies and procedures in place" that permitted the other inmate to obtain an unaccounted-for tool. More specifically, he contends defendants Cunningham and Young were negligent and deliberately

---

[3] Dkt.# 1 at 8. Plaintiff fails to explain what policies he is referring to here.

indifferent to his rights and safety, by their failure to safeguard the tool, permitting it to be missing and unaccounted for from Cunningham's work detail by one of the inmates who worked there for him,[4] and that their actions were a violation of unspecified federal rules, statutes, regulations, and BOP policies and procedures for the safekeeping and accountability for all institution tools and knives accessible to prisoners.[5]   Finally, he alleges that Defendant Cunningham wrote a false report of the incident, characterizing plaintiff as the aggressor, when the video of the incident clearly showed otherwise, and then all the defendants conspired to cover-up the assault by characterizing it as a fight, to conceal their failure to account for the missing screwdriver used by the other inmate to attack him.

As a result of the attack, Plaintiff alleges that he now suffers from what "may very well be life long [sic]" physical, mental and emotional damage;[6] more specifically: paranoia when eating in the dining hall and when around groups, and post-traumatic stress disorder, constantly looking over his shoulder in fear, which makes people around him feel uncomfortable in his presence.[7]

The plaintiff maintains that he has exhausted his administrative remedies with regard to his claims and attaches copies of the same.

As relief, he requests Two Million Dollars ($2,000,000.00) in compensatory damages; Three Million Dollars ($3,000,000.00) in punitive damages; "perspective damages [sic]" of Five Million Dollars ($5,000,000.00);  attorney and investigator fees; a jury trial; and injunctive relief

---

[4] Dkt.# 1 at 13.

[5] Dkt.# 1 at 11.

[6] Dkt.# 1 at 9.

[7] Dkt.# 1 at 14.

in the form of a directive forbidding his co-workers from harassing him for filing suit.[8]  Further, he requests that the Court overturn the Disciplinary Hearing Officer's ("DHO") decision regarding the May 2, 2013 assault; return to him his good time credits; and expunge the incident report from his BOP conduct file.[9]

## B. **Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment**

In their dispositive motion, the defendants allege that the case should be dismissed or summary judgment granted in their favor because:

1)  Plaintiff's claims are time-barred;

2)  Plaintiff's assault claims should be barred for failure to exhaust administrative remedies;

3) Plaintiff's failure to protect claim lacks merit;

4)  Plaintiff's attempt to overturn his allegedly false disciplinary action is not appropriately brought in a Bivens action;

5) FCI Gilmer is not a proper defendant;

6) supervisory liability is inapplicable in a Bivens action; and

7) the defendants are entitled to qualified immunity for their discretionary function actions.

## C. **Plaintiff's Response**

In Plaintiff's response to the defendants' dispositive motion, Plaintiff reiterates his arguments and attempts to refute the defendants' on the same, contending, *inter alia*, that:

1)  he did fully exhaust his administrative remedies and even if his administrative remedies were untimely filed, they were never rejected for untimeliness;

2) his Bivens action was timely filed, because he filed it within two years of exhausting his administrative remedies;

---

[8] Dkt.# 1 at 9. The plaintiff makes no further mention in the complaint of having been harassed for filing suit.

[9] Dkt.# 1 at 14.

3) the Defendants should not be able to evade liability for their failure to accept responsibility for the whereabouts of tools and are not entitled to qualified immunity.

4) Plaintiff insists that the defendants were deliberately indifferent; denies that they have to "harbor a purpose of harming prisoners" or need to know that there is a serious risk or that harm will actually occur for a finding of deliberate indifference, "as long as they have actual knowledge of the risk."[10]

5) Petitioner appears to make a contradictory argument that the screwdriver used to stab him was a tool under Officer Cunningham and Young's specific control, while suggesting a new claim that the screwdriver was a multipurpose tool that originated from elsewhere within FCI Gilmer.

6) Plaintiff denies that he wants his disciplinary action overturned because he was not fighting, because he agrees that he did fight; he contends that if he wanted to live, he had no choice but to fight, and he should not be punished for defending himself.

## III. <u>Standard of Review</u>

### A. <u>Motion to Dismiss</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1356 (1990). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. <u>Mylan Labs, Inc. v. Matkari</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts have long cited the

---

[10] Dkt.# 49 at 13.

"rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitled him to relief." <u>Conley</u>, 355 U.S. at 45-46. In <u>Twombly</u>, the United States Supreme Court noted that a complaint need not asserts "detailed factual allegation," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," <u>id</u>. (citations omitted), to one that is "plausible on its face," <u>id</u>. at 570, rather than merely "conceivable," <u>Id.</u> Therefore, in order for a complaint to survive a dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." <u>Bass v. E.I. DuPont de Nemours & Co</u>., 324 F.3d 761, 765 (4th Cir. 2003) (citing <u>Dickson v. Microsoft Corp</u>., 309 F.3d 193, 213 (4th Cir. 2002); <u>Iodice v. United States</u>, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in <u>Ashcroft v. Iqbal</u>, where it held that a "claim had facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. <u>Id.</u>

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. <u>Summary Judgment</u>**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 447 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.

The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment

may be granted." <u>Felty v. Graves-Humphreys Co</u>., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u> at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita,</u> 475 U.S. at 587 (citation omitted).

<strong>IV. <u>Analysis</u></strong>

**A. <u>FCI Gilmer is not a proper defendant</u>**

This action is being analyzed pursuant to <u>Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). However, a <u>Bivens</u> cause of action cannot be brought against a federal agency. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 486 (1994); <u>Steele v. Federal Bureau of Prisons</u>, 355 F. 3d 1204 (10th Cir. 2003). Therefore, FCI Gilmer cannot be sued in a <u>Bivens</u> action. Accordingly, FCI Gilmer is not a proper defendant, and must be dismissed from this action.

**B. <u>Exhaustion of Administrative Remedies</u>**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes" and is required even when the relief sought is not available. <u>Porter</u>, 534 U.S. at 524; Booth, 532 U.S. at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. <u>See</u> <u>Porter</u>, 534 U.S. at 524 (citing <u>Booth</u>, 532 U.S. at 741) (emphasis added). In

addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements . . ." See Booth, 532 U.S. at 741 n.6.

The Bureau of Prisons has established a four-step Administrative Remedy Procedure, set forth in Title 28 of the Code of Federal Regulations, for the formal review of complaints filed by inmates relating to the conditions of their confinement. Title 28 C.F.R. § 542.10, *et seq*. This process is explained in the Inmate Handbook in every BOP facility. Under this system, an inmate must first request an informal resolution by filing a "BP-8," presenting an issue of concern informally to a staff member. Title 28 C.F.R.§542.13(a). If the informal resolution fails, or if an inmate is dissatisfied with the informal response, or if there is *no* response, the inmate may then submit a Request for Administrative Remedy, in the form of a formal written complaint, on the proper form (a BP-9), to the Warden of the institution within twenty (20) calendar days of the date of the incident upon which the complaint is based. Title 28 C.F.R. § 542.14(a). If the inmate's request is denied, or if the inmate is dissatisfied with the Warden's response, or if there is no response from the Warden within twenty (20) days, the inmate may file an appeal with the appropriate Regional Office, using the appropriate form (a BP-10), within twenty (20) calendar days of the Warden's response or the date the response would have been due. Title 28 C.F.R. §§542.18; 542.15(a). If the Regional Office denies relief, the inmate completes the administrative remedy process by appealing the decision to the Office of General Counsel, or the "Central Office," in Washington, D.C., using the appropriate form (a BP-11), within thirty (30) calendar days of the date the Regional Director signed the response. Id. The General Counsel's written response to the inmate's appeal is the final decision of the administrative remedy process, and an inmate is not deemed to have exhausted his or her administrative remedies until the request has been filed and acted upon at all the required agency levels. Id.

An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; <u>Gibbs v. Bureau of Prison Office, FCI</u>, 986 F.Supp. 941, 943 (D. Md. 1997).

In this case, to meet their initial burden of establishing that Plaintiff did not exhaust his administrative remedies, Defendants have provided the Court with a copy of Plaintiff's Administrative Remedy Generalized Retrieval[11] and copies of the grievances Plaintiff' filed and their responses to the same.

Defendants contend that Plaintiff filed Grievance No. 756635-F1 on November 6, 2013, alleging that he had been assaulted by another inmate wielding a BOP tool, that that inmate was in possession of that tool as a result of BOP staff's negligence in failing to account for all its tools, and requesting treatment for the PTSD he now suffers as a result of the assault.[12] A review of the copies of the grievances Plaintiff attached to his complaint indicates that filed a BP-8, Request for Informal Resolution, over this claim on October 7, 2013.[13] He received a response the same day.[14] On October 10, 2013, Plaintiff and a staff member whose signature is illegible concluded that informal resolution had not been reached.[15] Thereafter, Plaintiff filed his BP-9 on October 16, 2013, not on November 6, 2013;[16] it is apparent from the record that November 6, 2013 date cited by the Defendants is the date that this BP-9 was *received* by the Warden, not the

---

[11] Dkt.# 30-1 at 23 – 28.

[12] Dkt.# 30 at 9, <u>see</u> <u>also</u> Dkt.# 30-1 at 26.

[13] Dkt.#1-2 at 1.

[14] The response stated that "staff accountability is a security issue with the captain and custody staff and will be addressed accordingly. Request Inmate Evans to see staff pyschologist [sic] McDermott via cop-out or visit in psychology." <u>Id.</u>, §5.

[15] <u>Id.</u>, §7.

[16] Dkt.# 1-3 at 1.

date on which it was filed.[17] Nonetheless, while the Warden's December 2, 2013 response to it addresses only Plaintiff's request for treatment for PTSD,[18] the Warden made no remark about Grievance No. 756635-F1 having been untimely filed. The response advised Plaintiff that if he was dissatisfied with the response, he had 20 days to appeal it to the Mid-Atlantic Regional Office.

On December 2, 2013, the same day he received the Warden's denial response, Plaintiff appealed to the Mid-Atlantic Regional Director by filing a BP-10, again raising the same issues.[19] The appeal was denied on December 24, 2013; the grievance's untimeliness was not mentioned in the denial.[20] The denial of the BP-10 advised that if dissatisfied with the response, he should file his appeal within 30 calendar days of the date of the December 24, 2013 response. On January 14, 2014, Plaintiff appealed this denial to the Office of General Counsel, or the "Central Office," in Washington, D.C. by filing a BP-11, again raising the same issues.[21] On June 18, 2015, the Administrator for National Inmate Appeals appeal denied the appeal; again, there was no mention of untimeliness in the denial.[22] Forty-six days later, on August 3, 2015, Plaintiff filed this case.

Accordingly, it is apparent from the record that Plaintiff did not begin the administrative remedy process within the prescribed twenty (20) calendar days from the date of the incident upon which the complaint is based. Title 28 C.F.R. § 542.14(a). Instead, Plaintiff waited until

---

[17] Dkt.# 30-1 at 26.

[18] Dkt.# 1-3 at 2.

[19] Dkt.# 1-5 at 1.

[20] Id. at 2.

[21] Dkt.# 1-4 at 1.

[22] Id. at 2.

five and a half months had elapsed from the date of the May 2, 2013 assault to file his BP-9. Nonetheless, once he initiated the process, thereafter, he timely completed each step in the BOP grievance process. Moreover, at no time did the BOP ever deny his grievance or appeal on the basis of untimeliness. Because the BOP never denied his grievances on the basis of untimeliness, Plaintiff's claims will be given review.

## C. Statute of Limitations

The defendants argue that Plaintiff's cause of action accrued on May 2, 2013, the date of the altercation, and that under the applicable 2-year statute of limitation, Plaintiff was required to file his claim on or before May 2, 2015, but did not file suit until August 3, 2015. In response, Plaintiff argues that he could not file suit until he exhausted his administrative remedies; he did not completely exhaust until he received his final denial letter from Matthew W. Mellady and he then had six months from the date of that letter in which to bring suit.[23] He contends that he filed suit well in advance of the 6-month deadline referenced in the letter.[24]

In claims brought under § 1983, the state law for the statute of limitations applies.[25] See Owens v. Okure, 488 U.S. 235, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989). However, the undersigned notes that while a Bivens plaintiff pursues his administrative remedies, as he is obligated to do by the PLRA, the otherwise applicable statute of limitations is tolled. Young v. Thompson, No. 2:10cv66, 2011 WL 3297494, Bailey, J. (N.D. W.Va. July 29, 2011)(citing Johnson v. Lappin, 2011 WL: 560459 (S.D. W.Va. Jan. 6, 2011)); see Lopez v. S.C.D.C., No.

---

[23] Plaintiff attaches a copy of the April 29, 2015 final denial letter from Matthew Mellady to his response. See Dkt.# 49-4 at 2.

[24] It is apparent that Plaintiff is confusing the administrative settlement claim process under the Federal Tort Claim Act with the administrative remedy process under the PLRA.

[25] It is well established that case law under 42 U.S.C. § 1983 is applicable to Bivens actions. See Butz v. Economou, 438 U.S. 478, 504 (1978).

3:06251-PMD-JRM, 2007 WL 2021875 *2 (D.S.C. 2007) ("The Fourth Circuit has not addressed the issue of whether the statute of limitations for a § 1983 action should be equitably tolled while a prisoner is exhausting the administrative process. However the 'uniform holdings of the circuits that have considered the question' typically tolls the statute of limitations.") citing Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005)); see also Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000); Gonzalez v. Hasty, 651 F.3d 318, 323 – 24 (2nd Cir. 2011); Harris v. Hegmann, 198 F.3d 153, 158 (5th Cir. 1999) (per curiam); Blackburn v. South Carolina, 2009 U.S. Dist. LEXIS 18398, *22-23, 2009 WL 632542 (D.S.C. Mar. 10, 2009) (while a § 1983 inmate is waiting for a resolution on his grievance, the statute of limitations is tolled; the relevant date is the date upon which the administrative remedy is finally exhausted).

Here, as noted *supra,* even though Plaintiff admittedly initiated the BOP administrative remedy process late, the BOP never denied his grievances on the basis of untimeliness, but continued to permit him to move through each step of the grievance process. Accordingly, Plaintiff completed the exhaustion process on June 18, 2015, when he received the final denial from the Office of General Counsel in Washington, D.C.; he then had until June 18, 2017 to file suit. He filed the instant action on August 3, 2015 and therefore, he timely filed within the two-year period from completion of the administrative remedy process. Therefore, his claims must be given review.

**D. Qualified Immunity for Plaintiff's Failure to Protect Claim**

Because the Court finds that Plaintiff exhausted his administrative remedies and that his claims are not time-barred, the undersigned next addresses their argument that they are entitled to qualified immunity.

With regard to qualified immunity, the United States Supreme Court has provided that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992). The analysis of the defense of qualified immunity is examined using a two-step analysis. Saucier v. Katz, 533 U.S. 194 (2001). The first step is to determine whether the facts alleged show that the defendants' conduct violated a constitutional right. Id. at 201. If the facts so viewed do not establish a violation of a constitutional right, the plaintiff cannot prevail, and "there is no necessity for further inquiries concerning qualified immunity." Id. However, if a favorable view of the facts does establish such a violation, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. Id. If the right was not clearly established, the defendants are entitled to qualified immunity. Id.

**1) Lieutenant Yarber and Other Unnamed Staff's Deliberate Indifference for Failing to Protect and Promptly Intervene in the Inmate-on-Inmate Attack**

Plaintiff alleges that Lt. Yarber was present when the attack occurred and failed to protect him, permitting the other inmate to assault him. Plaintiff appears to argue that his injuries could have been avoided if staff had responded more quickly to diffuse the fight. He further contends, without specifically identifying which defendant(s) he is referring to, that "the defendants did not assist him" once the attack began.[26]

Deliberate indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim. Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987). However, not every injury suffered by an inmate at the hands of other inmates translates into

---

[26] Dkt.# 1 at 9.

constitutional liability for the prison officials responsible for the Plaintiff's safety. See Farmer v. Brennan, 511 U.S. 825, 835 (1994)(holding that a prison official may be held liable only if he "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."). The test is not whether an official knew or should have known of the possibility of harm, but whether he did in fact know of it and consciously disregarded that risk. "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. While the objective information known to the official may be used to infer the knowledge he actually had, and to draw inferences about his actual state of mind, those inferences are not conclusive.

The defendants contend that the BOP staff immediately responded to the assault, and that the assault, which was videotaped,[27] lasted less than 14 seconds.[28] The sworn Declaration of FCI Gilmer's SIS Technician Ricky Kelley states that the video of the incident shows that the fight lasted less than 14 seconds and that staff responded immediately.[29]

Defendant Yarber's sworn Declaration on the point avers, in pertinent part, that:

I was in the Inmate Dinning [sic] Area at the time of the fight and I responded immediately . . . I do recall that both Plaintiff and the other inmate were exchanging punches, and from what I remember, both inmates were in possession of the weapon at some point during the fight. The fight did not last long, though both inmates initially refused orders to stop fighting. When they stopped, both . . . were escorted to the Medical Department to be medically assessed and then both were taken to the Special Housing Unit.

Dkt.# 30-5, ¶4 at 2.

---

[27] Dkt.# 30-2, ¶5 at 2.

[28] Dkt.# 30 at 11 and   30-2, ¶7 at 3.

[29] Dkt.# 30-2 at 3.

Defendant Captain Young's sworn Declaration on the point states that "I do recall the incident in question and remember that I did immediately respond to a fight call in the dining hall involving Plaintiff and another inmate. By the time I arrived, staff had already separated Plaintiff and the other inmate because the fight was over quickly. As such, I did not observe the fight."[30]

Likewise, Defendant Officer Cunningham's sworn Declaration on the point states in pertinent part:

> I was in the Inmate Dinning [sic] Area, along with other staff members when the fight occurred and I responded immediately to the fight. I am not certain who started the altercation, but when I saw it, Plaintiff and the other inmate were swinging at each other. I did observe Plaintiff lunge and strike the other inmate during the fight. It appeared to me that Plaintiff had a weapon and was swinging it at the other inmate during portions of the fight. I observed the other inmate end up on his back and in possession of the weapon. We separated the inmates and they were both escorted to the Medical Department to be medically assessed. They were then both taken to the Special Housing Unit.

Dkt.# 30-4, ¶4 at 2.

Here, as traumatic and frightening as the attack likely was, despite his claims to the contrary, Plaintiff's physical injuries from the attack were not substantial. The record reveals that attack was brief, over with in less than 14 seconds; despite Plaintiff's claims otherwise, it is apparent that staff intervened immediately, and Plaintiff was immediately taken to FCI Glmer's medical department for evaluation and treatment. His injuries consisted of five 1 cm. superficial bleeding puncture wounds: one on the right upper temporal area of his scalp; one above the left ear; one in the left armpit; one on the upper center of the back; and one on the left side of the neck. He also had superficial abrasion of the right PIP knuckle.[31] He did not require emergency

---

[30] Dkt.# 30-6, ¶3 at 2.

[31] Dkt.# 30-1 at 16.

treatment at an outside hospital; the wounds were assessed, cleaned, and dressed by FCI Gilmer nursing staff. He received a tetanus shot and a 3-day prescription for Motrin 800 mg three times daily, and was instructed to follow up at sick call as needed.[32] Plaintiff states he was also given 5 band aids and a pack of medicated jelly, presumably antibiotic ointment.[33]

Plaintiff's response to the defendants' dispositive motion does not even attempt to rebut the defendants' contention that they intervened promptly to protect him; his response makes no further mention of the issue.

The plaintiff has not provided the Court with anything in his response to refute the sworn Declarations by the FCI Gilmer staff averring that they did immediately come to his aid. Generally unsworn statements without more are not admissible on summary judgment to contradict sworn affidavits. Edens v. Kennedy, 112 Fed. Appx. 870, 877 (4th Cir. 2004) citing Scott v. Edinburg, 346 F.3d 752, 759 (7th Cir. 2003) and Provident Life & Accident Ins. Co. v. Goel, 274 F.3d 984, 1000 (5th Cir. 2001). Accordingly, balancing the plaintiff's bald assertions in his complaint against the sworn declarations of the defendants, the undersigned gives no credible weight to the same. Plaintiff has failed to show that any of the defendants knew of a substantial risk of serious harm to him and consciously disregarded that risk. As such, Plaintiff has not shown that the defendants' conduct violated a constitutional right, there is no further need for inquiry concerning analyze their qualified immunity. Saucier v. Katz, *supra* 533 U.S. 201. Because there is no genuine issue as to any material fact on this claim, the defendants should be granted summary judgment as to this issue.

## 2) Officer Cunningham, Captain Young, and Any Other Defendant's Deliberate Indifference in Failing to Safeguard a BOP Tool

---

[32] Id.

[33] Dkt.# 49 at 8.

Plaintiff alleges that Officer Cunningham and Captain Young were deliberately indifferent to his and other inmates' safety and failed to protect him because Cunningham, as the overseer of the other inmate's employment at FCI Gilmer, permitted that inmate to obtain the tool by not ensuring that the tool was secured and by not accounting for its absence, and Young, as the Captain of Security at FCI Gilmer, allowed the Phillips-head screwdriver used in the attack on him to be missing and unaccounted for. Plaintiff further makes a conclusory claim that "all the defendants"[34] not only Cunningham and Young, failed to safeguard the Phillips-head screw driver, constituted a violation of unspecified federal rules, statutes, regulations, and BOP "Policies and Procedures" for the safe keeping and accountability for all institution tools and knives accessible to prisoners.[35]

Attached as exhibits to their dispositive motion, the defendants provided photographs of the weapon used in the assault. When first confiscated after the attack and photographed, the Phillips-head screwdriver had what appeared to be black electrical tape wrapped around padding on its handle, with a loop of cord protruding at the handle end. Photos of the screwdriver after the tape, padding, and cord were removed revealed an unusual-looking tool; welded or attached to the previously-covered end is a rounded flat disc with what appeared to be three different sizes of wrenches cut into its outer surface.[36] Further, Defendants produced the sworn Declaration of

---

[34] Plaintiff offers no explanation as to how "all" of the defendants were involved in the alleged failure to keep BOP tools secure. Because this claims is merely a conclusory allegation offered without support, it will not be given further analysis. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. See Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 513 U.S. 871 (1994).

[35] It appears that Plaintiff may have been referring to Chapter 2 of BOP Program Statement 5500.14, Tools and Hazardous Materials.

[36] Dkt.# 30-2 at 5.

Percy Lanham, FCI Gilmer's Tool Room Officer, who denies that the modified weapon/tool used in the assault was a BOP tool, stating in pertinent part:

> 2. As tool room officer, I am familiar with the tools that FCI Gilmer has and the procedures we have to control our tools.

> 3. I have reviewed the photographs of the weapon used in the inmate-on-inmate fight between inmate Michael Evans and another inmate on May 2, 2013.

> 4. The modified weapon is not an FCI Gilmer tool and it is therefore not subject to any tool control procedures. Though the weapon does appear to be made from some type of phillips [sic] head screwdriver, the uniqueness of the tool and its handle make it easy for me to confirm that this is not a tool that belongs to FCI Gilmer.[37]

> 5. FCI Gilmer has not had any reports of missing screwdrivers going all the way back to the end of December 2011, the oldest record I have on missing tools.

Dkt.# 30-3 at 2.

Defendants also produced the sworn Declaration of Officer Sebert Cunningham, who admitted that the inmate that fought with Plaintiff was assigned as an orderly; denied that the modified weapon used in the assault was a BOP tool; and asserted that therefore, it was not a missing tool.[38] The sworn Declaration of Defendant Captain Kevin Young, avers that the fabricated weapon used in the fight was not an FCI Gilmer tool, and as such, there was no missing tool to report and no tool control policy that applied to the weapon used.[39] Finally, the sworn Declaration of Ricky Kelley, Special Investigative Services ("SIS") Technician at FCI

---

[37] Although not specifically referenced by Mr. Lanham in his declaration, the apparent obviousness that the tool was not a BOP tool is explained by Chapter 2, § 202 of BOP Program Statement 5500.14, which states that BOP tools must be marked on the steel or shank portion of the tool with an identification symbol which identifies the storage area of the tool when not in use; tools that cannot be marked without damage, such as surgical instruments, micrometers and small drill bits, are inventoried and kept in locked storage areas not in use. Presumably the screwdriver had no such marking. Moreover, § 203 of BOP Program Statement 5500.14 states that tools in work areas are to be stored on "shadow boards" which show the outline of the tools. Presumably a tool with such an unusually-shaped handle would be immediately recognizable as a non-BOP tool.

[38] Dkt.# 30-4 at 2.

[39] Dkt.# 30-6 at 2.

Gilmer, asserts that the SIS investigation conducted after the May 2, 2013 assault revealed that the weapon was a non-BOP modified Phillips-head screwdriver of some type; neither inmate would admit to having the weapon; and that "as is common with inmate weapons," it was not known where the weapon came from but it was not a tool belonging to FCI Gilmer.[40]

In his response to the defendants' dispositive motion contention that the screwdriver was a non-BOP tool, while simultaneously continuing to insist that the tool *was* a BOP tool, plaintiff also now posits that the tool was "an accessory tool that was packaged with maintenance equipment, recreation equipment . . . or a machine, that was ordered, shipped, and delivered to" FCI Gilmer,[41] and requests the opportunity to conduct discovery on the issue. Further, Plaintiff argues that even if the screwdriver were not a BOP tool, the defendants should be permitted to escape liability for their failure to secure it, contending that inmates cannot purchase such a tool at the commissary; cannot receive one by mail; or bring one in to the institution with them. Therefore, he suggests that the tool could only have come into FCI Gilmer if an employee brought it in; it came from one of the work areas within FCI Gilmer; or if it was ordered by FCI Gilmer and came through Receiving and Departure.

It is apparent from the sworn Declarations of BOP staff produced by the defendants that the tool used in the attack was not a BOP tool, and therefore, the tool was not subject to its tool-control policies. As such, none of the defendants can be found liable for failure to safeguard BOP tools. Further, Plaintiff has not alleged that any BOP staff had any prior knowledge that the other inmate possessed a weapon, let alone posed a threat to him before the attack, or that the inmate who attacked him was designated "keep-away" of his. Because the plaintiff has not

---

[40] Dkt.# 30-2, ¶¶5 - 6 at 2 – 3.

[41] Dkt.# 49 at 3.

provided the Court with anything to refute the sworn Declarations by the FCI Gilmer staff in his response, his bald assertions cannot prevail over the defendants' sworn declarations. Given that it is clear from the record that the tool was *not* a BOP tool, and that the defendants did not in fact know of its existence prior to the attack, Plaintiff has failed to show that Defendants Cunningham, Young, or any other defendant knew of a substantial risk of serious harm to him and consciously disregarded that risk. Because Plaintiff has not shown that the defendants' conduct violated a constitutional right, there is no further need for any inquiry concerning analyze their qualified immunity. Saucier v. Katz, *supra* 533 U.S. 201. Accordingly, because there is no genuine issue as to any material fact as to this claim, summary judgment should be granted to the defendants on this claim.

### 3) Warden Perdue

Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Therefore, to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown.[42] See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

In this case, Plaintiff's complaint makes no specific allegations against Warden Perdue to indicate that he was personally involved in any alleged violation of his constitutional rights, other than to allege that Warden Perdue failed to enforce the BOP's Tools Policies, Procedures, Regulations and Rules, to ensure the safekeeping and accountability for all institution tools

---

[42] To the extent Plaintiff may be asserting that Warden Perdue violated his constitutional rights by denying his administrative grievances, that claim is without merit. This is not the type of personal involvement required to state a § 1983 claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D. Md. March 31, 2003).

accessible to prisoners. This allegation has already been shown to be meritless, *supra,* given that the non-BOP tool in question was not subject to the BOP tools policy. Likewise, Plaintiff's contention in his response that Perdue was assaulted because Perdue "failed to set up and/or follow polices [sic] to secure, account for, or dispose of multiple purpose tools that come packaged with equipment ordered from outside companies" has no merit; Plaintiff has offered no proof that the screwdriver was such a tool. "Unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves- Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Rather, it appears that Plaintiff has merely named Perdue in his official or supervisory capacities as Warden of FCI Gilmer. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978)). In this case, although Plaintiff does assert that a policy or custom of the prison played a part in the alleged violation of his constitutional rights, it is apparent from the record that there actually was no violation of the tool policy because the weapon used was not a BOP tool.

There is no *respondeat superior* liability under § 1983. See Monell v. Dep't of Soc. Servs., *supra* at 691-92; Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, 550 F.2d at 928. A supervisor may be liable under § 1983 if the following elements are established:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1999). Here, Plaintiff fails to make any allegations revealing the presence of the required elements for supervisory liability. Therefore, because Plaintiff has not shown that any conduct by Warden Perdue violated a constitutional right, there is no further need for inquiry concerning analyze Perdue's qualified immunity. Saucier v. Katz, *supra* 533 U.S. 201. Accordingly, the undersigned recommends that Warden Perdue be dismissed with prejudice from this action for Plaintiff's failure to state a claim against him.

**E. Failure to Supervise**

Plaintiff contends that Defendant Cunningham, in his position as a guard at FCI Gilmer "oversaw the employment of the inmate" who assaulted him on May 2, 2013, and "directly allow[ed] him to obtain the Phillips screw driver that was not secured, nor accounted for[.]"[43] Similarly, Plaintiff contends that Defendant Young, as the Captain of Security at FCI Gilmer, allowed the Phillips-head screwdriver used in the attack on him to be missing and unaccounted for.

Here, the Plaintiff appears to be making an implied claim that Cunningham and Young owed him a duty of care that they breached. Plaintiff's conclusory claim in this regard is insufficiently pled. Although Fed. R. Civ. P. 8(c) provides that "all pleadings shall be so construed as to do substantial justice," the Fourth Circuit further holds that a "heightened pleading standard" is highly appropriate in actions against government officials. Randall v. United States, 95 F.3d 339 (4th Cir. 1996). See also Dunbar Corp. v. Lindsey, 905 F.2d 754, 764

---

[43] Dkt.# 1 at 2.

(4th Cir. 1990). Moreover, because the tool in question has already been shown to be a non-BOP tool, not subject to BOP tool-control policies, neither Cunningham or Young could have violated any duty of care that they had to supervise the other inmate who somehow gained possession of it. Accordingly, this allegation fails to state a claim upon which relief can be granted, and there is no genuine issue of material fact sufficient to prevent summary judgment being granted to the defendants.

**F. Disciplinary Action Decisions Resulting in Loss of Good Conduct Time are Not Cognizable in a Bivens action**

In his complaint, Plaintiff contends that Defendant Cunningham falsely and wrongfully charged him with Fighting with Another Person as a result of the May 2, 2013 attack. Plaintiff contends that he was not the aggressor and was only defending himself. He requests that his DHO decision be overturned and he be restored the 14 days of Good Conduct Time he lost as a result. The defendants assert that an attempt to overturn a false disciplinary action is not cognizable in a Bivens action. In response, Plaintiff denies (despite having requested it in his claim for relief) that he is seeking to have his disciplinary action overturned, because he admits that he did fight. Nonetheless, he continues to make arguments regarding due process violations occurring from the disciplinary action and complains of having been confined in the SHU as a result of the charges.

Challenges to the conditions of a prisoner's confinement are appropriately raised pursuant to a civil rights complaint. See Preiser v. Rodriguez, 411 U.S. 475, 499-500 (1973)(a civil rights action is a proper remedy for a prisoner challenging the conditions of his prison life). However, a habeas corpus petition under 28 U.S.C. § 2241 is used to attack the manner in which a sentence is executed. See 28 U.S.C. § 2241. It is well settled that challenges to the fact or length of confinement are properly considered in the context of habeas corpus. Id. at 487 – 88

(holding that a challenge to the length of "actual confinement in prison" must be brought as a habeas corpus action). Here, even if he now denies it, because Plaintiff was attempting to shorten the length of his confinement by specifically requesting to have a disciplinary proceeding overturned and good conduct time restored, he was raising a claim that must be brought in a habeas corpus petition.[44]

Moreover, as for Plaintiff's claim that his Eighth Amendment rights were violated by the false misconduct charges that were brought against him, that claim must fail as well. Plaintiff admits that he did fight; therefore, the charge was not false. Even though one report suggested that Plaintiff was the aggressor, the ultimate finding of the DHO investigation was that he was not.[45] Nonetheless, even if the misconduct charge were false, Plaintiff does not have a constitutional right to be free from false disciplinary reports. "The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights." Lewis v. Viton, No. 07-3663, 2007 WL 2362587, at *9 (D. N.J. Aug. 14, 2007) (citing Freeman v. Rideout, 808 F.2d 949, 962-53 (2nd Cir. 1986)). There simply is no constitutional right to be free from being falsely accused. See McClay v. Fowlkes, No. 1:07cv1080, 2008 WL 3992637, *4 n.6 (E.D. Va. Aug. 27, 2008) ("To the extent the plaintiff claims that he was falsely accused, he fails to state a § 1983 claim because '[t]he prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.") (internal citations omitted); Anderson v. Green, No. 082708, 2009 WL 2711885 *4 (D. Md. Aug. 24, 2009); Riggerman v. Ziegler, No. 5:11-0868, 2012 WL 4119674, *5 (S.D. W.Va. Aug. 22, 2012) (inmates have no constitutional right prohibiting false charges against them).

---

[44] Even if this claim were cognizable in this action, in his response to defendants' dispositive motion, Plaintiff admits "that he did fight with another." Dkt.# 49 at 4; see also id. at 15.

[45] See Discipline Hearing Officer Report, Dkt.# 30-1, §V at 6 - 7.

Because there is no genuine issue of material fact as to this claim, summary judgment should be granted to the defendants.

## G. <u>Conspiracy</u>

Plaintiff contends that all of the defendants, including Defendants Cunningham, Young, and Yarber conspired to cover up the May 2, 2013 assault by characterizing it as a fight, to conceal their failure to account for the missing screwdriver used by the other inmate to attack him.

To establish a civil conspiracy, a plaintiff must prove that two or more persons acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in the plaintiff's deprivation of a constitutional right. <u>Hinkle v. City of Clarksburg, WV</u>, 81 F.3d 416 (4th Cir. 1996). Moreover, the plaintiff has a "weighty burden to establish a civil rights conspiracy." <u>Id.</u> at 421. While the plaintiff does not need to "produce direct evidence of a meeting of the minds, [he] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." <u>Id.</u> The plaintiff must produce evidence that at least leads to the inference that the defendants had a mutual agreement to conspire against him, "mere speculation and conjecture will not suffice." <u>Puglise v. Cobb County</u>, 4 F.Supp.2d 1172, 1181 (N.D. Ga. 1998).

It appears that the plaintiff's claim is that the goal of the defendants' alleged conspiracy was to falsely charge Plaintiff with fighting to conceal their own failure to keep appropriate control over a BOP tool. However, it has already been shown, *supra,* that the tool in question was not a BOP tool, and therefore, the defendants did not violate any BOP tool control policy. Further, Plaintiff admits in his response that he was, in fact, fighting with the other inmate, thus, Plaintiff cannot show that any defendant could have conspired for such a purpose.

Therefore, even viewing all of the facts in the light most favorable to the plaintiff, he has failed to establish that two or more persons carried out a preconceived plan or common design. In fact, he provides no evidence which would lead to even an inference that the defendants had an agreement to conspire against him. This claim, as well, fails to state a claim upon which relief can be granted against any defendant. Because the record shows that there is no genuine issue as to any material fact, the defendants are entitled to judgment as a matter of law.

## V. <u>Recommendation</u>

In consideration of the foregoing, the undersigned hereby recommends that the Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Dkt.# 29) be **GRANTED** and that the Plaintiff's complaint (Dkt.# 1) be **DISMISSED with prejudice**.

**Within fourteen (14) days after being served with a copy of the Report and Recommendation**, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, at his last known address as reflected on the docket. In addition, the Clerk shall transmit a copy electronically to any counsel

of record as provided in the Administrative Procedures for Electronic Case Filing in the United

States District Court for the Northern District of West Virginia.

DATED: May 31, 2016

/s/   James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE