IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**MICHAEL SHAWN EVANS,**

    Plaintiff,

v.

                                    CIVIL ACTION NO. 2:15-CV-60
                                    (BAILEY)

**OFFICER CUNNINGHAM,** Guard at
FCI Gilmer**; LT. YARBER,** Lt. of Prison
Guards**; WARDEN PERDUE; CAPT.
YOUNG,** Capt. of Security at FCI Gilmer**;**
and **FCI GILMER,**

    Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION

I.    Introduction

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation of United States Magistrate Judge James E. Seibert [Doc. 51]. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Seibert for submission of a proposed report and a recommendation ("R&R"). Magistrate Judge Seibert filed his R&R on May 31, 2016, wherein he recommends this Court dismiss the plaintiff's Complaint with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the

1

factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. **Thomas v. Arn**, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); **Snyder v. Ridenour**, 889 F.2d 1363, 1366 (4th Cir. 1989); **United States v. Schronce**, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Seibert's R&R were due within fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). After being granted a brief extension, plaintiff timely filed his Objections [Doc. 57] on July 5, 2016. Accordingly, this Court will review the portions of the R&R to which the plaintiff objects under a *de novo* standard of review. The remainder of the R&R will be reviewed for clear error.

II.     Factual and Procedural History

Plaintiff's Complaint raises Eighth Amendment violation claims for failure to protect and failure to supervise, arising out of a May 2, 2013, assault from behind while he was eating in the FCI Gilmer dining hall by another inmate wielding a Phillips-head screwdriver. Plaintiff contends he was wrongfully disciplined because he fought back in self-defense when the guards failed to immediately intervene, and that he lost good conduct time as a result. He asserts that Warden Perdue was deliberately indifferent to his safety by failing to set any policies or procedures in place and/or failing to enforce the control of BOP tool policies, procedures, regulations and rules that would assure accountability for all tools, to protect prisoners like him from attack. Further, he contends Warden Perdue upheld the false misconduct report against him, in order to cover up the missing screwdriver. He

alleges that all the defendants, "intentionally with neglect or negligence failed to adhere to the directives, policies and procedures in place" that permitted the other inmate to obtain an unaccounted-for tool. More specifically, he contends defendants Cunningham and Young were negligent and deliberately indifferent to his rights and safety, by their failure to safeguard the tool, permitting it to be missing and unaccounted for from Cunningham's work detail by one of the inmates who worked there for him, and that their actions were a violation of unspecified federal rules, statutes, regulations, and BOP policies and procedures for the safekeeping and accountability for all institution tools and knives accessible to prisoners.

Finally, he alleges that defendant Cunningham wrote a false report of the incident, characterizing plaintiff as the aggressor, when the video of the incident clearly showed otherwise, and then all the defendants conspired to cover up the assault by characterizing it as a fight, to conceal their failure to account for the missing screwdriver used by the other inmate to attack him.

As a result of the attack, plaintiff alleges that he now suffers from what "may very well be life long" physical, mental and emotional damage, more specifically: paranoia when eating in the dining hall and when around groups, and post-traumatic stress disorder, constantly looking over his shoulder in fear, which makes people around him feel uncomfortable in his presence.

The plaintiff maintains that he has exhausted his administrative remedies with regard to his claims and attaches copies of the same.

In their Motion to Dismiss or in the Alternative, Motion for Summary Judgment [Doc.

29], the defendants raise several arguments, including: (1) plaintiff's claims are time-barred;[1] (2) failure to exhaust administrative remedies;[2] (3) plaintiff's failure to protect claim lacks merit; (4) challenges to disciplinary action are not appropriately brought pursuant to *Bivens*; (5) FCI Gilmer is not a proper defendant;[3] (6) supervisory liability is not applicable in *Bivens* actions; and (7) the defendants are entitled to qualified immunity.

III. Discussion

　　A. **Qualified Immunity**

This Court begins its discussion of the merits of the Motion with the threshold issue of whether the defendants are entitled to the defense of qualified immunity. ***Price v. Sasser***, 65 F.3d 342, 345 (4th Cir. 1995). Qualified immunity protects a defendant from liability as well as from the burden of standing trial. For that reason, courts should determine as early on in the proceedings as possible whether a defendant is entitled to qualified immunity. See ***Saucier v. Katz****,* 533 U.S. 194, 201 (2001).

"Qualified immunity 'balances two important interests—the need to hold public

---

[1] The R&R found that the plaintiff's claims are not time-barred, and no party has objected to this conclusion. Having independently reviewed the same, this Court **ADOPTS** the magistrate judge's finding.

[2] The R&R extensively addressed the issue of exhaustion of administrative remedies and determined the plaintiff did timely complete each step in the BOP grievance process. No party objected to this finding. This Court has reviewed the same and **ADOPTS** the magistrate judge's finding that the plaintiff's claims should be given review.

[3] The R&R correctly found that FCI Gilmer is not a proper defendant because a ***Bivens*** action cannot be brought against a federal agency. See ***FDIC v. Meyer***, 510 U.S. 471, 486 (1994). It does not appear that either party objected to this finding, and this Court **ADOPTS** the same. Accordingly, defendant FCI Gilmer must be **DISMISSED**.

4

officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.' **Pearson v. Callahan,** 555 U.S. 223, 231 (2009). Put differently, qualified immunity shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' **Harlow v. Fitzgerald,** 457 U.S. 800, 818 (1982)." **Strickland v. Halsey**, 2015 WL 4928270, at *3 (4th Cir. Aug. 19, 2015).

"Consequently, a defendant is entitled to qualified immunity in a § 1983 case if (1) his or her conduct did not violate the constitutional right at issue or (2) the right was not 'clearly established' at the time of the incident. **Pearson,** 555 U.S. at 232, 236. Succeeding on either prong is sufficient for entitlement to qualified immunity, and courts may begin with either prong. **Id.** at 234." **Id**.

Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." **Harlow v. Fitzgerald,** 457 U.S. 800, 818 (1982). In determining whether a defendant is entitled to qualified immunity, the "first task is to identify the specific right that the plaintiff asserts was infringed by the challenged conduct, recognizing that the right must be defined at the appropriate level of particularity. **Taylor v. Waters,** 81 F.3d 429, 433 (4th Cir. 1996). We then consider whether, at the time of the claimed violation, this right was clearly established and '"whether a reasonable person in the official's position would have known that his conduct would violate that right."' **Id.** (quoting **Gordon v. Kidd,** 971 F.2d

5

1087, 1093 (4th Cir. 1992))." ***Winfield v. Bass***, 106 F.3d 525, 530 (4th Cir. 1997).

The Eighth Amendment requires prison officials to "protect prisoners from violence at the hands of other prisoners." ***Farmer*** [***v. Brennan***], 511 U.S. 825, 833 (1970). Officials must take "reasonable measures to guarantee the safety of the inmates." ***Hudson v. Palmer***, 468 U.S. 517, 526–27 (1984). In other words, "[t]he government and its officials are not free to let the state of nature take its course." ***Farmer***, 511 U.S. at 833. "The burden is on the prisoner to demonstrate that prison officials violated the Eighth Amendment, and that burden is a heavy one." ***Pyles v. Fahim***, 771 F.3d 403, 408–09 (7th Cir. 2014) (citing ***Whitley v. Albers***, 475 U.S. 312, 325 (1986)).

It is not enough to state that the right to personal security was well established at the time of the attack. Rather, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." ***Winfield v. Bass***, 106 F.3d 525, 531 (4th Cir. 1997), quoting ***Anderson v. Creighton***, 483 U.S. 635, 640 (1987). *See* ***Malley v. Briggs***, 475 U.S. 335, 341 (1986) (Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law.").

In determining whether the defendants violated Mr. Evans' Eighth Amendment rights, one must keep in mind that "[n]ot every 'injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the

6

victim's safety.' *Farmer,* 511 U.S. at 834. Instead, the Supreme Court has outlined two requirements for an Eighth Amendment failure to protect claim. First, 'a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities."' *Id.* (quoting **Rhodes v. Chapman,** 452 U.S. 337, 347 (1981)). In other words, the denial of the prisoner's constitutional rights must be 'sufficiently serious.' *Id.* Second, the prison official must have a 'sufficiently culpable state of mind,' *id.,* which means the official either purposefully caused the harm or acted with 'deliberate indifference,' **Wilson v. Seiter,** 501 U.S. 294, 302–03 (1991)." **Strickland v. Halsey**, 2015 WL 4928270, at *4 (4th Cir. Aug. 19, 2015).

"In the Eighth Amendment context, deliberate indifference 'lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law.' **Brice v. Va. Beach Corr. Ctr.,** 58 F.3d 101, 105 (4th Cir. 1995). For a prison official to be liable, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' *Farmer,* 511 U.S. at 837. The test is subjective, not objective. *Brice,* 58 F.3d at 105. A prison official is not liable if he or she 'knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.' *Farmer,* 511 U.S. at 844; *see also* **Rich v. Bruce,** 129 F.3d 336, 338 (4th Cir. 1997) (finding that a prison official was not liable, because he did not actually draw the inference that the inmate was exposed to a substantial risk of serious harm)." *Id.*

Reviewing the facts presented by Mr. Evans, this Court can find no Eighth Amendment violation, and further finds the defendants entitled to qualified immunity.

7

Looking to the facts as presented, the plaintiff was in the crowded dining hall eating when another inmate assaulted him from behind with a Phillips-head screwdriver. Plaintiff argues that Lt. Yarber and the other FCI Gilmer employees who were present waited until plaintiff had the attacker contained before intervening. Plaintiff states that the video surveillance shows this. The defendants, on the other hand, have provided the sworn Declaration of FCI Gilmer's SIS Technician, Ricky Kelly, which states that the video of the incident shows that the fight lasted fewer than fourteen (14) seconds and that staff responded immediately.

Further, defendant Yarber's sworn Declaration states:

> I was in the Inmate Dinning (sic) Area at the time of the fight and I responded immediately . . . I do recall that both Plaintiff and the other inmate were exchanging punches, and from what I remember, both inmates were in possession of the weapon at some point during the fight. The fight did not last long, though both inmates refused orders to stop fighting. When they stopped, both . . were escorted to the Medical Department to be medically assessed and then both were taken to the Special Housing Unit.

[Doc. 30-5, ¶ 4 at 2].

Defendant Captain Young's sworn Declaration states that he "immediately respond[ed] to a fight call in the dining hall involving plaintiff and another inmate [and] [b]y the time I arrived, staff had already separated plaintiff and the other inmate because the fight was over quickly." [Doc. 30-6, ¶ 3 at 2].

Defendant Officer Cunningham's sworn Declaration similarly states:

8

> I am not certain who started the altercation, but when I saw it, plaintiff and the other inmate were swinging at each other. I did observe plaintiff lunge ant strike the other inmate during the fight. It appeared to me that plaintiff had a weapon and was swinging it at the other inmate during portions of the fight. I observed the other inmate end up on his back and in possession of the weapon. We separated the inmates and they were both escorted to the Medical Department to be medically assessed. They were then both taken to the Special Housing Unit.

[Doc. 30-4, ¶ 4 at 2].

These actions are hardly consistent with a deliberate intention to deny the plaintiff his safety. "Reasonable measures" are all that is required to guarantee the safety of inmates. **Hudson v. Palmer**, 468 U.S. 517, 526-27 (1984). Here, contrary to plaintiff's Objections – which consist of bald assertions – the evidence reveals that a brief attack occurred in which staff intervened, and plaintiff was treated for his injuries.

In **Borello v. Allison**, 446 F.3d 742 (7th Cir. 2006), the Seventh Circuit framed the issue as follows:

> To establish an Eight Amendment failure to protect claim, a plaintiff must show 1) that he suffered an objectively "sufficiently serious" injury; and 2) that he was "incarcerated under conditions posing a substantial risk of serious harm." **Farmer v. Brennan**, 511 U.S. 825, 834 (1994). Additionally,
>
>> a prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk

by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 847. That the officer had actual knowledge of impending harm can be inferred from circumstantial evidence. *Id.* at 842; *James v. Milwaukee County,* 956 F.2d 696, 700 (7th Cir. 1992); *Peate v. McCann,* 294 F.3d 879, 882 (7th Cir. 2002). Proving deliberate indifference, however, requires more than a showing of negligent or even grossly negligent behavior. *Farmer,* 511 U.S. at 835, 114 S.Ct. 1970; *James,* 956 F.2d at 699. Rather, the corrections officer must have acted with the equivalent of criminal recklessness. *Farmer,* 511 U.S. at 836–37; *James,* 956 F.2d at 700; *Jackson* [*v. Ill. Medi–Car, Inc.,* 300 F.3d 760, 765 (7th Cir. 2002)]. Indeed, an officer who actually knew of a substantial risk to a detainee's safety is free from liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that [he was] deliberately indifferent." *Peate,* 294 F.3d at 882 (citing *Farmer,* 511 U.S. at 847). "The test of deliberate indifference ensures that the mere failure of the prison official to choose the best course of action does not amount to a constitutional violation." *Id.* (citing *Farmer,* 511 U.S. at 844).

*Borello v. Allison*, 446 F.3d 742, 747-48 (7th Cir. 2006), quoting *Fisher v. Lovejoy,* 414

F.3d 659, 662 (7th Cir. 2005).

The Seventh Circuit then found that the officers had taken reasonable action given the risk, stating that "[w]e emphasize that a prison official is not entitled to qualified immunity simply because he or she takes *any* action in response to a risk of harm to an inmate—that response must be reasonable." *Id*. at 749. "[A]s we have repeatedly stated, '[m]ere negligence or even gross negligence does not constitute deliberate indifference.' **Snipes v. DeTella**, 95 F.3d 586, 590 (7th Cir. 1996) (citing **Wilson v. Seiter**, 501 U.S. 294, 305 (1991)). Failure to protect an inmate from harm 'violates the Eighth Amendment's prohibition of cruel and unusual punishment only if "deliberate indifference by prison officials [to the prisoner's welfare] effectively condones the attack by allowing it to happen[.]"' **Lewis v. Richards**, 107 F.3d 549, 553 (7th Cir. 1997) (quoting **Haley** [**v. Gross**, 86 F.3d 630, 640 (7th Cir. 1996)].

Based on the record, this Court finds that the plaintiff has failed to show that the defendants effectively condoned this attack. Accordingly, this Court finds no constitutional violation in that the prison defendants did not act with deliberate indifference, but rather took reasonable steps to remedy and alleviate the problem. In addition, this Court finds no subjective knowledge on the defendants' part that their actions would deprive the plaintiff of his constitutional rights. Plaintiff's Objection is **OVERRULED**.

B.  **Warden Perdue**

Plaintiff objects to the magistrate judge's finding that Warden Perdue should be

11

dismissed for lack of any personal involvement. He asserts that defendant Perdue "does not qualify for qualified immunity for the same reasons articulated in Plaintiff's previous objections with respect to the [other defendants]." [Doc. 57 at 20]. The defendant fails to recognize the distinction set forth in the R&R regarding Section 1983 liability. As noted in the R&R, the Complaint simply fails to make specific allegations that Warden Perdue was personally involved in any alleged violation of his constitutional rights other than his bald assertion that defendant Perdue failed to enforce the BOP's Tools Policies, Procedures, Regulations and Rules. As the tool was non-BOP, those Rules simply do not apply to it.

Rather, the R&R notes that plaintiff has named Perdue in his official or supervisory capacities as Warden of FCI Gilmer. The magistrate judge's analysis regarding this point is clear and concise, and this Court finds no need to rehash the same. Accordingly, this Objection is **OVERRULED**.

### C. Failure to Supervise

Plaintiff alleges a loosely based claim that defendants Cunningham and Young failed to supervise the other inmate and "directly allow[ed] him to obtain the Phillips screw driver that was not secured, nor accounted for" and was ultimately used in the fight [Doc. 1 at 2]. The plaintiff's theory hinges on his adamant assertion that this tool was brought in by means sanctioned by FCI Gilmer, and which the institution failed to secure and account for. This tool, as thoroughly explained in the R&R, was shown to be a non-BOP tool, not subject to BOP tool-control policies. Further, it has been established that defendants Cunningham and Young violated no duty of care in failing to supervise another inmate who unknowingly had obtained the tool. Plaintiff has failed to establish any genuine issue of material fact

sufficient to prevent summary judgment in favor of the defendants. The plaintiff's Objection is **OVERRULED**.

### D. Disciplinary Action Resulting in Loss of Good Conduct Time

Next, plaintiff contends that as a result of the dining hall incident, he was falsely and wrongfully charged with Fighting with Another Person and that he lost fourteen (14) days of Good Conduct Time as a result. This claim fails for two reasons.

First, challenges to loss of good conduct time attacks the manner in which a sentence is executed; accordingly, such challenges must be raised pursuant to a habeas corpus petition under 28 U.S.C. § 2241.

Second, even if the charge was false, plaintiff does not have a constitutional right to be free from false disciplinary reports. Prisoners have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." **Freeman v. Rideout**, 808 F.2d 949, 951 (2nd Cir. 1986). This Objection is **OVERRULED**.

### E. Conspiracy

Plaintiff rehashes his Conspiracy claim that all of the defendants conspired to cover up the May 2, 2013, assault by characterizing it as a fight to conceal their failure to account for the alleged missing screwdriver used by the other inmate in the attack.

A civil conspiracy is shown where two or more persons act in concert and that some overt act was done in furtherance of the conspiracy which resulted in the plaintiff's deprivation of a constitutional right. See **Hinkle v. City of Clarksburg, WV**, 81 F.2d 416

13

(4th Cir. 1996).  Moreover, the plaintiff has a "weighty burden to establish a civil rights conspiracy." *Id*. at 421.  While a plaintiff is not required to "produce direct evidence of a meeting of the minds, [he] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Id*.  "Mere speculation and conjecture will not suffice." ***Puglise v. Cobb County***, 4 F.Supp.2d 1172, 1181 (N.D. Ga. 1998).

In his Objections, the plaintiff continues to assert that the defendants knew exactly where the phillips screwdriver came from; however, he continues to fail to explain where he believes it came from.  He only asserts that it could not have been smuggled into the prison, which as previously noted is mere speculation.  Further, as the R&R points out, the plaintiff admits that he was, in fact, fighting with the other inmate; therefore, it is absurd to allege that the defendants conspired to falsely charge the plaintiff with fighting to conceal their alleged failure to keep appropriate control over a BOP tool.  This Objection is **OVERRULED**.

## Conclusion

Therefore, upon careful review of the above, it is the opinion of this Court that the **Report and Recommendation [Doc. 51]** should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated in the magistrate judge's report.  The plaintiff's Objections **[Doc. 57]** are **OVERRULED**.  The Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment **[Doc. 29]** is **GRANTED**.  Accordingly, this Court **ORDERS** that the plaintiff's Complaint **[Doc. 1]** be **DENIED** and **DISMISSED WITH PREJUDICE**.  In addition, the pending Motion for Discovery Under Fed. R. Civ. P. 26(a)(1) **[Doc. 56]** is

**DENIED AS MOOT**.  This Court further **DIRECTS** the Clerk to enter judgment in favor of the defendants and to **STRIKE** this case from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record and to mail a copy to the *pro se* plaintiff.

**DATED:** July 20, 2016.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE